IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHN L. VIA                                                                                       PLAINTIFF

      v.                                    Civil No. 10-6001

LT. FLOYD BRANTLEY,
Ouachita River Correctional Unit
(ORCU); MAJOR RON ADAMS,
ORCU; ASSISTANT WARDEN
T. HIPPLE, ORCU; WARDEN
M.D. REED, ORCU                                                                            DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. Initially, he proceeded *pro se* and *in forma pauperis*. On June 17, 2011, a notice of appearance was filed by Attorney Frances Morris Finley.

Plaintiff maintains he was denied adequate medical care following injuries he sustained on August 4, 2009, while working on a clean-up crew. Defendants have filed a summary judgment motion (Docs. 33, 34 & 35). To assist Plaintiff in responding to the summary judgment motion, I propounded a questionnaire (Doc. 46). Plaintiff filed a *pro se* partial response to the motion (Doc. 44) and a *pro se* response to the questionnaire (Doc. 50). On July 5, 2011, an amended response (Doc. 52) was filed on behalf of the Plaintiff. Defendants filed a reply brief (Doc. 51) and a supplemental reply brief (Doc. 53). The motion is now ready for decision.

**1. Background**

Plaintiff was incarcerated at the Ouachita River Correctional Unit of the Arkansas Department of Correction (ADC) from August of 2008 until August of 2010. (Doc. 50 at ¶ 1; Doc.

44 at ¶ 1). On August 4, 2009, Plaintiff sustained an inner ear injury to his right ear while performing duties he was assigned as part of the ADC Regional Maintenance Squad. (Doc. 50 at ¶ 2(A). Specifically, as he was dragging brush a small branch punctured his right ear. *Id.* at ¶ 2(B). The injury was reported through the chain of command first to Sergeant Carpenter and then to Lieutenant Floyd Brantley. *Id.* at ¶ 3. According to Plaintiff, he stated that he was experiencing headache, dizziness, and loss of hearing in his right ear. *Id.*

Three hours later, while still suffering from the first injury, Plaintiff sustained a second injury to his left knee. (Doc. 50 at ¶ 4(A)). The injury occurred when Plaintiff slipped on an incline and hyper extended his left knee. *Id.* at ¶ 4(B).

Once Plaintiff returned to the Unit, he was taken to the infirmary and seen by medical personnel. (Doc. 50 at ¶ 5). It was determined he had a perforated right ear drum and an effusion of the left knee. *Id.* In November of 2009, Plaintiff was informed that he would need surgery on his knee. (Doc. 50 at ¶ 6).

The ADC has a grievance procedure for the resolution of inmate complaints. (Doc. 50 at ¶ 7). The procedure is contained in Administrative Directive 09-01 and requires inmates to fully exhaust administrative remedies prior to filing a civil lawsuit. *Id.* at ¶ 8. Plaintiff maintains he followed this procedure to the best of his ability. *Id.*

Charlotte Gardner is a medical grievance investigator and is the custodian of all inmate grievances involving medical matters. (Doc. 50 at ¶ 9). The first step of the grievance procedure, pertaining to medical issues, is to submit a formal grievance for the unit health services administrator's review. (Doc. 50 at ¶ 10). Plaintiff indicates he has on many occasions filed grievances with Dream Redic-Young. *Id.* In submitting a grievance, the inmate must "write a brief

statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate." *Id.* at ¶ 11. An inmate must specifically name each individual involved for there to be a proper investigation and response completed by the ADC. *Id.* at ¶ 12.

The second step in the grievance procedure is to appeal a grievance decision to the ADC's Deputy Director for Health and Correctional Programs. (Doc. 50 at ¶ 13). Upon review of the grievance appeal records, it was determined Plaintiff had only fully appealed one medical grievance, No. OR-09-00351 during the time frame January 7, 2008, to January 7, 2010. *Id.* at ¶ 14.

In Grievance No. OR-00351, Plaintiff was complaining about a discussion he had with Dr. Leggit in the infirmary on December 14, 2009. (Doc. 50 at ¶ 15(A)). Plaintiff indicated he was asking about the status of the surgery scheduled at the Diagnostics Unit with Dr. Lytle. *Id.* Plaintiff asked if the surgery would be soon because he was in pain. *Id.* Plaintiff indicates he was told whether the surgery was performed would be contingent on the outcome of his parole hearing scheduled for January 26th. *Id.* He was told the reason his surgery was contingent on his parole hearing was due to the length of rehabilitation needed post-surgery. *Id.* at ¶ 15(B). As the injury was work related, Plaintiff stated treatment of the injury should have no relation to his parole. *Id.* at ¶ 15(C).

Plaintiff appealed this decision. (Doc. 50 at ¶ 15(D)). In a conversation with Dream Redic-Young, Health Service Administrator, Plaintiff agreed to delay his parole three months or more so that he could have the surgery. *Id.*

Plaintiff had surgery on the knee in March of 2010. (Doc. 50 at ¶ 15(E)). While he has had some minor problems, Plaintiff stats the surgery was "for the most part" successful. *Id.*

Plaintiff submitted a grievance form No. OR-10-00043 in February of 2010. (Doc. 50 at ¶ 16(A)). He wanted the medical records to be revised to indicate "the injury as diagnosed." *Id.* He maintained Dr. Leggit's comment made in August to the effect that there was no perforation of his ear was inconsistent with his September comment that the perforation closed. *Id.* In response, Plaintiff was told this matter would be discussed with the physician. *Id.* at ¶ 16(B). While he was told this, Plaintiff states that to his knowledge no corrective action was taken. *Id.*

Plaintiff's attempt to appeal this grievance was rejected for the stated reason that he had failed to follow the policies for submitting an appeal. (Doc. 50 at ¶ 16(C)). Plaintiff states he did outline the reason for his disagreement and gave his name, ADC #, and date. *Id.*

Plaintiff did not include any mention of Defendants Floyd Brantley, Ron Adams, James Hipple, or Warden M.D. Reed in grievances OR-09-00315 or OR-10-00043. (Doc. 50 at ¶ 17). However, Plaintiff maintains he had not been "orientated about the grievance process" at the time he submitted them. *Id.*

Tiffanye Compton, is a inmate grievance supervisor for the ADC. (Doc. 50 at ¶ 18(A)). She is the custodian of records for non-medical grievances appealed to the Chief Deputy Director, Deputy Directors, or Assistant Directors of the ADC. *Id.* According to Compton, a review of Plaintiff's records indicates he had not filed any non-medical grievance appeals while incarcerated at the ADC. *Id.* at ¶ 18(B). However, Plaintiff states he sent copies of grievances and a letter to Mr. Hott Gibson. *Id.*

**2. Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a

summary judgment motion, the Court cannot weigh the evidence or resolve disputed issues of fact in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[A] disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact. To be material, a fact must affect the outcome of the suit under the governing law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011)(internal quotation marks and citations omitted).

### 3. Discussion

First, Defendants maintain that any official capacity claims are barred by the doctrine of sovereign immunity to the extent Plaintiff seeks monetary damages. Second, Defendants maintain Plaintiff did not exhaust his administrative remedies with respect to his claims. Furthermore, they maintain he must demonstrate he has exhausted his administrative remedies against each of the named defendants prior to filing the lawsuit.

Plaintiff argues that he is asserting a claim for damages and such a claim is not grievable under the ADC's grievance policy. Plaintiff also maintains he submitted a grievance on November 18, 2009, and December 12, 2009, concerning his knee injury. Additionally, he states he submitted a grievance regarding the contents of his medical records on February 2, 2010.

### A. Monetary Damages

A claim for monetary damages against the Defendants in their official capacity is the equivalent of a suit against a state agency and Eleventh Amendment immunity precludes this claim. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Defendants are therefore entitled to summary judgment on these claims.

### B. Exhaustion of Remedies

The Prison Litigation Reform Act requires an inmate to exhaust administrative remedies prior to filing suit in federal court. 42 U.S.C. § 1997e(a). Specifically, § 1997e(a) provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.* (internal citation omitted).

The Eighth Circuit has held an inmate cannot be held to the exhaustion requirement if there are no "available" administrative proceedings. "Although the PLRA does not provide a definition, the plain meaning of the term 'available' is 'capable of use for the accomplishment of a purpose: immediately utilizable . . . accessible.'" *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)(*quoting Webster's Third New International Dictionary* 150 (1986)). The court concluded "a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)." *Id.*

In this case, Plaintiff is asserting denial of medical care claims against the Defendants regarding an incident that occurred on August 4, 2009. Step one of the grievance procedure requires the Unit Level Grievance Form to be completed and submitted within fifteen days after the occurrence of the incident. *Defendants' Exhibit* C at pg. 5(E)(1). The inmate is instructed to be

"specific as to the substance of the issue or complaint [and] to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate." *Id.* at pg. 5(E)(2).

It is undisputed that Plaintiff submitted no grievances until November 18, 2009. (Doc. 1 at pg. 8). This grievance did concern the August 5th incident and mentioned Sergeant Carpenter and Lieutenant Brantley. It also set forth Plaintiff's belief the second injury to his knee would not have occurred if he had not been forced to work after the injury to his ear drum. *Id.* The grievance was rejected because it was not filed within fifteen days of the incident and did not concern a medical issue. *Id.* There is nothing to suggest Plaintiff appealed this decision.

Plaintiff did fully exhaust the grievance procedure with respect to the grievance he submitted on December 12th. (Doc. 33-1 at pg. 4). However, this grievance concerned a conversation Plaintiff had with Dr. Leggit regarding the scheduling of Plaintiff's surgery. *Id.* It did not deal with, or mention, the conduct of any of the Defendants. *Id.*

Although Plaintiff states he had not received any training with respect to the utilization of the grievance procedure, he does not maintain the Defendants interfered in the use of the procedure or in anyway made the procedure unavailable to the Plaintiff. Further, the grievance form itself advises the inmate to be specific as to the complaint "date, place, name of personnel involved and how [the inmate] was affected." (Doc. 31-1 at pg. 4). There is no suggestion in the record that the grievance forms were not available to the Plaintiff.

The PLRA requires "that a prisoner . . . complete the administrative review process in accordance with the applicable procedural rules, *including deadlines*, as a precondition to bringing suit." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)(emphasis added). The Eighth Circuit has "only excused inmates from complying with . . . grievance procedures when officials have prevented

prisoners from utilizing the procedures, . . . or when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).  Here, there is no evidence that Plaintiff's requests for grievance forms were ignored or that the prison officials themselves failed to comply with the procedures.  Plaintiff's failure to comply with the grievance procedure is therefore not excused.

### 4. Conclusion

For the reasons stated, I recommend that the summary judgment motion (Doc. 33) be granted and this case dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of August 2011.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE